933 F.2d 1001
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
CMCI, d/b/a Dennett Road Manor Nursing Home, Incorporated,
d/b/a Cuppett & Weeks Nursing Home, Incorporated,
Respondent.
 No. 90-3037.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1991.
Decided May 23, 1991.
 
 On Application for Enforcement of an Order of the National Labor Relations Board.
 Judith Ann Dowd, Supervisory Attorney, National Labor Relations Board, Washington, D.C. (Argued), for petitioner; Jerry M. Hunter, General Counsel, Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Nancy B. Hunt, National Labor Relations Board, Washington, D.C., on brief.
 Joseph S. Dreesen, Berens & Tate, P.C., Omaha, Neb., (Argued), for respondent; Kelvin C. Berens, Berens & Tate, P.C., Omaha, Neb., on brief.
 NLRB
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and REBECCA BEACH SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 CMCI, a corporation which operates two nursing homes in Oakland, Maryland, appeals from a decision of the National Labor Relations Board in which the Board found that CMCI committed unfair labor practices in violation of Sec. 8(a)(1) and (3) of the National Labor Relations Act. The Board found that CMCI violated Sec. 8(a)(1) "by polling their employees about their willingness to work in the event of a strike and by advising employees that its laundry operation would be contracted out and shut down, with a resultant loss of jobs if the Union won the election." In addition, the Board found that CMCI discharged two employees in retaliation for their union activity, thereby violating Sec. 8(a)(1) and (3).
 
 
 2
 With respect to the employee poll, CMCI argues that the poll was an honest error which did not have any coercive effects, that the number of employees polled was small and that simple interrogation unaccompanied by threats or other coercion is allowable under the NLRA. CMCI also asserts that the threats of job loss were not statements by a supervisor or agent of the company and therefore cannot form the basis of an unfair labor practice charge. Finally, CMCI maintains that there is no evidence that it had anti-union animus when it discharged the two employees, that it had valid reasons for the discharges, and that since two months had passed between the union election and the discharges, any animus that might have existed had long since dissipated.
 
 
 3
 With regard to the polling, the Board responds that employee polling is inherently coercive, that CMCI failed to assure employees that no reprisals would be taken, and that no employee strike was imminent that might have justified such questioning. The Board also observes that the threats of job loss emanated from Glenn Cuppett, the son of the nursing home administrator and the nephew of the company's owners, who held the title of assistant supervisor and regularly attended weekly department head meetings. Cuppett also earned more money than his supervisor despite the fact that the supervisor had a fifteen year tenure and Cuppett was only twenty-two years old. In such circumstances, the Board argues, the threats can reasonably be seen as statements by the company. Finally, the Board maintains that CMCI discharged two union leaders on charges of patient abuse without following its usual procedure of investigating the allegations and while lacking credible evidence that the employees engaged in any patient abuse. The lack of a rational reason for discharging the employees, combined with the coercive polling and threats of job loss, establish sufficient anti-union animus to justify reinstatement of the employees, according to the Board.
 
 
 4
 We have reviewed the record and heard oral argument and are convinced that the Board's findings are supported by substantial evidence. We therefore affirm the Board's decision and grant its application for enforcement of its corresponding order.
 
 
 5
 AFFIRMED.